UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

REDHAWK HOLDINGS CORP.                             CIVIL ACTION
AND BEECHWOOD PROPERTIES LLC

VERSUS                                             NO. 17-819

DANIEL J. SCHRIEBER AND                            SECTION "B"(2)
SCHREIBER LIVING TRUST DTD 2/08/95

## ORDER AND REASONS

Defendant filed a motion to enforce settlement agreement, alleging that plaintiff breached its obligations under the settlement agreement. Rec. Doc. 151. Plaintiff timely filed a response in opposition. Rec. Doc. 157. For the reasons discussed below,

**IT IS ORDERED** that the motion to enforce the settlement agreement is **GRANTED**.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This case is about an unsuccessful business venture between two experienced businessmen. The unsuccessful business venture, and some personal issues, led to this litigation. The facts surrounding the venture are summarized in a previously issued order (Rec. Doc. 122). Many of the facts and procedural history in this case do not bear on the analysis of the instant motion, those relevant to the instant motion are summarized here.

Originally, plaintiffs, RedHawk Holdings Corp.("RedHawk") and Beechwood Properties LLC ("Beechwood",) filed suit against

1

defendants, Daniel J. Schreiber ("Schreiber") and Schreiber Living Trust DTD 2/08/95 ("Schreiber Trust"), for securities fraud under 10B and 20 of the Exchange Act and SEC Rule 10b-5, securities fraud under sections 18 and 20 of the Exchange Act, fraud under state law, breach of contract, unjust enrichment, and breach of fiduciary duties. Rec. Doc. 1. Schreiber thereafter filed a counterclaim against plaintiffs alleging unlawful interferences with his ability to transfer his shares of stock in RedHawk. Rec. Doc. 49.

In October 2018, this court granted Schreiber's motion for summary judgment dismissing all of RedHawk and Beechwood's claims against Schreiber. *See* Rec. Doc. 122. In January 2019, this court denied RedHawk and Beechwood's motion for new trial and motion to dismiss Schreiber's counterclaims for lack of subject matter jurisdiction. Rec. Doc. 143 and 144.

On February 6, 2019 this court entered an order of dismissal after being advised by counsel for the parties that a compromise was reached between parties. Rec. Doc. 150. Parties later signed a settlement agreement and release. Rec. Doc. 151-2. Under the settlement agreement, Schreiber would receive $250,000 and was issued two non-interest-bearing promissory notes in the amount of $200,000 each in exchange for his shares in RedHawk. Id. The first promissory note is due on or before September 6, 2020 and the second promissory note is due on or before September 5, 2021. Rec.

Doc. 151-2 at 2. The settlement agreement also contains the following provision;

> "6. Acceleration. Note 1 and Note 2 will also be subject to these terms:… (c)While any amounts are due to Schreiber, the Company agrees that if it issues any shares of any series or class for cash, it shall use 50% of all monetary proceeds received from the issuance to reduce the debts owed to Schreiber." Rec. Doc. 151-2 at 3-4.

On September 16, 2019, RedHawk issued a Securities and Exchange Commission ("SEC") Form 8-K and contemporaneous press release announcing that RedHawk "completed the sale of $500,000 in aggregate principal amount of new convertible notes". Rec. Doc 151-3 at 4. The convertible notes issued mature five years from the date of issuance and are convertible into shares of the RedHawk's common stock. Id. The contemporaneous press release also announced that RedHawk issued a number of warrants to the purchasers of the convertible notes exercisable ten years from the date of issuance for the purchase of an aggregate of $12,500,000 shares of RedHawk's common stock. Id.

Schreiber filed the instant motion seeking enforcement of the settlement agreement's acceleration clause alleging RedHawk was in breach of the settlement agreement because RedHawk issued shares for cash and failed to use 50% of the monetary proceeds to reduce RedHawk's debt to Schreiber. Rec. Doc. 151. RedHawk and Beechwood filed a response to Schreiber's motion to enforce arguing the issuance of the notes and warrants did not trigger the settlement

3

agreement's acceleration clause because notes and warrants are not shares. Rec. Doc. 157. Schreiber sought and was granted leave to reply in which Schreiber further argued that RedHawk was in default. Rec. Doc. 161.

**LAW AND ANALYSIS**

**Enforcement of Settlement Agreements**

Federal courts have the power to enforce agreements that settle litigation pending before them. *Eastern Energy, Inc. v. Unico Oil & Gas, Inc.,* 861 F.2d 1379, 1380 (5th Cir. 1988). "Although federal courts possess the inherent power to enforce agreements entered into in settlement of litigation, the construction and enforcement of settlement agreements is governed by the principles of state law applicable to contracts generally." *Id.* (citing *Lockette v. Greyhound Lines, Inc.*, 817 F.2d 1182, 1185 (5th Cir. 1987)). Louisiana law demands that any settlement agreements be made in writing or recited in open court, in which case the recitation shall be susceptible of being transcribed from the record of the proceedings. La. Civ. Code art. 3071.

The Court's role in interpreting contracts is to determine the common intent of the parties. La. Civ. Code art.2045. In determining common intent, pursuant to Louisiana Civil Code article 2047, words and phrases used in contract are to be construed using their plain, ordinary and generally prevailing

4

meaning, unless the words have acquired a technical meaning. *See Henry v. South Louisiana Sugars Co-op., Inc.*, 957 So.2d 1275, 1277 (La.2007) (citing *Cadwallader v. Allstate Ins. Co.,* 848 So.2d 577, 580 (La.2003)). "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent" and the agreement must be enforced as written. *Hebert v. Webre,* 982 So.2d 770, 773–74 (La.2008) citing La. Civ. Code art.2046.

This court retained jurisdiction, through the order of dismissal, for all purposes including enforcing the settlement agreement entered into by the parties. Rec. Doc. 150. It is undisputed that the plaintiffs and the defendants entered into a written compromise which included an acceleration clause that requires RedHawk to use 50% of any monetary proceeds received from the sale of shares to decrease its debt to Schreiber. The issue before this court is whether RedHawk's issuance of convertible notes constitutes an issuance of shares thereby triggering the acceleration clause.

**Shares**

Shares are the units into which the proprietary interests in a corporation are divided. La. R. S. § 12:1-140.

> A share of stock is simply one of the proportionate integers or units, the sum of which constitutes the capital stock of the corporation. In a broader sense, a

5

> share of the capital stock may be defined as the interest or rights which the owner ... has in the management of the corporation, and in its surplus profits, and, on a dissolution, in all of its assets remaining after the payment of its debts.

*Rousseau v. 3 Eagles Aviation, Inc.*, No. CIV.A. 02-0208, 2004 WL 1737920, at *4 (E.D. La.Aug. 3, 2004), *aff'd,* 130 F. App'x 687 (5th Cir. 2005) quoting *Succession of Quintero*, 209 La. 279, 24 So. 2d 589, 591 (La. 1945). Per Louisiana Revised Statute, shares may be classified into classes or series by a corporation's board of directors. La. R. S. § 12:1-602.

In interpreting the phrase "any shares of any series or class" found in the acceleration clause of the parties' settlement agreement, it is clear and explicit that "any series or class" refers directly to "shares". The series or class refers explicitly to the category of shares as indicated by the Louisiana Revised Statute. Thus, to trigger the acceleration clause the convertible notes issued by RedHawk need to be "a series or class of shares".

**<u>Convertible notes and warrants are not a series or class of shares.</u>**

A corporation may issue rights, options, or warrants for the purchase of shares or other securities of the corporation. La. R. S. § 12:1-624. The board of directors shall determine the terms upon which the rights, options, or warrants are issued and the terms, including the consideration, for which the shares or other securities are to be issued. Id.

6

Schreiber argues that RedHawk's sale of convertible notes and stock warrants for $500,000 constitutes an issuance of shares for cash. Rec. Doc. 151-1 at 6. Schreiber cites to a Middle District of Louisiana case that uses Black's Law Dictionary to explain, "[a]"stock warrant" is a security "instrument granting the holder a long-term (usu. a five-to ten-year) option to buy shares at a fixed price. " *Tr. of FleetCor Techs. Licensee Tr. #1 v. Fleet Fuel, Inc.*, No. CV 05-235-JJB, 2007 WL 9702206, at *1 (M.D. La. Sept. 28, 2007) quoting BLACK'S LAW DICTIONARY 1441 (7th ed. 1999). Schreiber further cites to a Southern District of New York case which explains convertible notes;

> "A "convertible note" is a hybrid security with characteristics of both stocks and bonds. "Like bonds, convertible notes pay interest … and have a maturity date ..." However, "like stock, the price of convertible notes is more sensitive to the earnings prospects of the issuer than an ordinary bond because each note can be converted to equity." If the price of a company's stock rises enough, it becomes advantageous to an investor in convertible notes to convert its notes into stock at the maturity date."

*Sharette v. Credit Suisse Int'l*, 127 F. Supp. 3d 60, 70 (S.D.N.Y. 2015).

Alternatively, RedHawk contends that convertible notes and warrants are not shares and the issuance of both notes and warrants is instead a debt of the company. Rec. Doc. 157. RedHawk insists that unless, and until, the convertible notes are converted to shares, RedHawk owes the amounts due under the notes. Id. at 16.

7

In light of the party's arguments and the meanings and purposes of notes and warrants, an issuance of convertible notes and warrants is not an issuance of shares. To own shares is to have ownership in a company; the owner of shares is a shareholder. A holder of a convertible note or warrant is not a shareholder but has the opportunity at a later, agreed upon date, to become a shareholder. Shares are not issued on convertible notes or warrants until the maturity date. When the maturity date on a convertible note arrives, RedHawk must either pay the note along with accrued interest or convert the note into equity at which time RedHawk would then issue shares. A sale of a convertible note is not a sale of shares.

Likewise, shares are not sold when a corporation issues a warrant. A warrant allows a holder to buy shares at a later date for a specific price. In *Helvering v. Southwest Consol. Corp.,* the Supreme Court of the United States explained that a warrant holder is not a shareholder*. Helvering v. Sw. Consol. Corp.,* 315 U.S. 194, 201 (1942). The court stated that a warrant holder, unlike a shareholder, "does not have, and may never acquire, any legal or equitable rights in shares of stock." *Id.* quoting *Lisman v. Milwaukee, L S & W R Co*, 161 F. 472, 480 (C.C.E.D. Wis. 1908), *aff'd*, 170 F. 1020 (7th Cir. 1909). A holder of warrants is not a shareholder, and he cannot assert the rights of a

8

shareholder; his rights are wholly contractual. *Id.* at 201. An issuance of a warrant is not a sale of shares.

Consequently, convertible notes and warrants are not a series or class of shares. No shares are issued at the sale of a convertible note nor are shares issued at the issuing of a warrant. Thus, RedHawk's sale of convertible notes and stock warrants for $500,000 was not an issuance of shares which would trigger the settlement agreement's acceleration clause.

**RedHawk's is in default of the settlement agreement**

As discussed above, the sale the convertible notes and warrants for $500,000 referenced in RedHawk's SEC Form 8-K in September 2019 did not constitute an issuance of shares. Although it would appear more reasonable for Redhawk to reduce its debt to Schreiber when it first receives the funds from a sale of a convertible note, the sale does not trigger the acceleration clause as the sale of the note is not a sale of shares. However, at the moment RedHawk converts a convertible note into shares, rather than pay the amount due on the note, the acceleration clause in the settlement agreement is triggered requiring RedHawk to use 50% of all monetary proceeds received from the issuance to reduce the debts owed to Schreiber. Similarly, at the moment RedHawk allows a warrant holder to exercise a warrant and issues shares, the settlement agreement's acceleration clause is also triggered. Once the note is converted or the warrant is exercised a sale of shares has occurred. RedHawk

does not have the luxury of using convertible notes or warrants to evade the acceleration clause. Thus, when the shares are issued, RedHawk must use 50% of all monetary proceeds received from the initial sale of the note to reduce its debt to Schreiber.

Schreiber asserts and provides RedHawk's most recent 10-K and 10-Q filings which identify multiple instances in which RedHawk has converted notes into equity by issuing shares rather than paying the amounts due on notes. Schreiber emphasizes that he has not received any payments towards the remaining notes owed by RedHawk. Redhawk fails to address this issue. Upon review of the 8-K and 10-Q filings attached to the motion to enforce settlement, RedHawk has converted at least $709,048 of convertible notes into at least 171,313,575 shares.[1] In accordance with the settlement agreement's acceleration clause, RedHawk is obligated to use 50% of those proceeds to reduce its debt to Schreiber. The use of 50% of the proceeds would have successfully eliminated RedHawk's debt to Schreiber. RedHawk is in default of the settlement agreement.

Because RedHawk has issued shares for cash, by converting notes into equity, while amounts are due to Schreiber, RedHawk owes 50%

---

[1] $41,250 of convertible notes, outstanding as of June 30, 2019, were converted into 41,250,000 shares of common stock. Rec. Doc. 151-6 at 37. $76,068 of convertibles notes were converted into 15,213,646 shares of common stock subsequent to June 30, 2019. Rec. Doc. 151-6 at 41. $574,250 aggregate principal amount of RedHawk's convertible promissory notes were converted into 114,849,929 shares of common stock. Rec. Doc. 151-6 at 43. $17,480 of convertible notes were converted into shares of common stock subsequent to September 30, 2019. Rec. Doc. 161-1 at 13.

10

of all monetary proceeds received from the sales to reduce the debts owed to Schreiber. RedHawk is in default of the settlement agreement.

New Orleans, Louisiana this 2nd day of March, 2020

_____
SENIOR UNITED STATES DISTRICT JUDGE