UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

REDHAWK HOLDINGS CORP., ET AL.                CIVIL ACTION

VERSUS                                        NO. 17-819

DANIEL J. SCHREIBER, ET AL.                   SECTION "B"(5)

ORDER AND REASONS

Before the Court are plaintiff RedHawk Holdings Corporation ("RedHawk")'s motion for reconsideration of this Court's Order and Reasons at Record Document 211 (Rec. Doc. 214) and defendants' response in opposition (Rec. Doc. 216).

For the reasons discussed below,

**IT IS ORDERED** that RedHawk's motion for reconsideration (Rec. Doc. 214) is **DENIED**.

I.   **FACTS AND PROCEDURAL HISTORY**

The facts of the underlying action have been well documented on the record. Plaintiffs RedHawk Holdings Corporation ("RedHawk") and Beechwood Properties, LLC filed this lawsuit against Daniel J. Schreiber, the former CEO and director of RedHawk, for, amongst other claims, securities fraud. Rec. Docs. 1, 20. Schreiber filed counterclaims alleging an interference with his ability to transfer his shares of RedHawk stock. Rec. Doc. 49. The parties engaged in settlement discussions before the Magistrate Judge in January 2019. Rec. Docs. 147, 148. Shortly thereafter, the undersigned was notified in February 2019 that a settlement had

1

been reached. Rec. Doc. 149. This court subsequently dismissed the action but retained jurisdiction to enforce the settlement upon a showing of good cause. Rec. Doc. 150.

Under the settlement agreement, Schreiber would transfer all his RedHawk stock back to RedHawk. Rec. Doc. 151-2 at 2. In exchange, RedHawk agreed to pay $250,000 immediately upon signing the agreement and issue two non-interest-bearing promissory notes in the amount of $200,000 each to be paid on or before September 6, 2020 and September 5, 2021 respectively. *Id.* The agreement contained an acceleration clause for the two promissory notes that included several terms including (1) a thirty-day grace period following any RedHawk default, after which all payments would be immediately due and payable plus 18% interest and the greater of reasonable attorneys' fees or 10% of the amount due and (2) a provision that if RedHawk issued any shares of any series or class for cash while any amounts are due, 50% of the monetary proceeds were to be paid to Schreiber to reduce the amount owed. *Id.* at 3-4.

A few months after confecting the settlement agreement, RedHawk issued on September 16, 2019 a SEC Form 8-8k and a press release providing that it "completed the sale of $500,000 in aggregate principal amount of new convertible notes," and issued a number of stock warrants that are exercisable in ten years for

the purchase of an aggregate of 12.5 million shares of RedHawk common stock. Rec. Doc. 151-1 at 3.

The following day, Schreiber informed RedHawk that this action triggered the acceleration clause because it failed to pay Schreiber $250,000 from the proceeds of the sale and RedHawk was now in default. Rec. Doc. 151-1 at 3. RedHawk responded it was not in default because the transaction was for sale of convertible notes and not for the sale of stocks. *Id.* at 4.

In November 2019, Schreiber filed a motion to enforce settlement seeking the accelerated amounts of the notes for $400,000 plus 18% interest running from the date of the agreement, and attorney fees of either the actual sums expended in pursuing that payment or 10% of the amount due, whichever is greater. RedHawk responded to the motion and this Court granted Schreiber leave to reply. Rec. Docs. 157, 161. RedHawk opposed the motion for leave and requested an opportunity to submit a sur-reply should the Court grant it but leave to file a sur-reply was denied. *See* Rec. Doc. 159.

In March 2020, this Court granted Schreiber's motion to enforce the settlement agreement, Rec. Doc. 162, and awarded Schreiber $519,495.78, which included the entire accelerated amount due on the notes plus 18% interest and attorneys' fees. Rec. Doc. 179. RedHawk appealed the judgment and the Fifth Circuit vacated and remanded to allow RedHawk to file a sur-reply and

thereafter reconsider the instant motion to enforce settlement. *RedHawk Holdings Corp. v. Schreiber*, 836 F. App'x 232, 233, 237 (5th Cir. 2020) (per curiam).

While the appeal was pending, RedHawk paid all principal amounts due to Schreiber under the settlement agreement and notes ($400,000 for the remaining notes plus the $250,000 RedHawk paid at the time of settlement). Rec. Doc. 208 at 3. RedHawk subsequently filed its sur-reply to the motion, Rec. Doc. 208, and Schreiber responded. Rec. Doc. 210. Therefore, the only remaining issue at the time was whether RedHawk breached the acceleration provision of the settlement agreement, thereby entitling Schreiber to interest and attorneys' fees or 10% of the amounts due, whichever is greater.[1] On September 23, 2021, the Court ruled that RedHawk did breach the acceleration clause, and thus, Schreiber was entitled to an additional $101,490.27, representing contractual interest in the amount of 18% on the outstanding principal debts, until they were paid, plus reasonable attorneys' fees and costs incurred with its successful efforts to enforce the settlement agreement or 10% of the amounts due, whichever is greater. Rec. Doc. 211. Shortly after the Court's ruling, Schreiber filed a motion for attorneys' fees and costs. Rec. Doc. 213. RedHawk then filed a motion for reconsideration of the Court's

---

[1] While opposing entitlement issues, RedHawk did not appear to question Schreiber's statement that its current attorney fees in seeking enforcement are greater than 10% of the amount allegedly due.

Order granting Schreiber's motion to enforce settlement (Rec. Doc. 211) and related Judgment (Rec. Doc. 212). Rec. Doc. 214.

## II.  LAW AND ANALYSIS

### A. Motion for Reconsideration Standard

A motion filed after judgment requesting that the court reconsider a prior ruling is evaluated either as a motion to alter or amend a judgment under Federal Rule of Civil Procedure 59(e) or as a motion for relief from a final judgment, order[,] or proceeding under Federal Rule of Civil Procedure 60(b). *Tex. A&M Rsch. Found. v. Magna Transp., Inc.*, 338 F.3d 394, 400 (5th Cir. 2003). If the motion is filed within twenty-eight days of the judgment or order at issue, the motion can be brought under Rule 59(e). *Id.* When filed after, the motion falls under Rule 60(b). *Id.*

A Rule 59(e) motion "calls into question the correctness of a judgment." *In re Transtexas Gas Corp.*, 303 F.3d 571, 581 (5th Cir. 2002). Rule 59(e) serves "the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence." *Atchafalaya Basinkeeper v. Bostick*, 663 F. App'x 291, 294 (5th Cir. 2016) (quoting *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989)). Amending a judgment is appropriate under Rule 59(e): "(1) where there has been an intervening change in the controlling law; (2) where the movant presents newly discovered evidence that was previously

unavailable; or (3) to correct a manifest error of law or fact." *Berezowsky v. Ojeda*, 652 F. App'x 249, 251 (5th Cir. 2016) (quoting *Demahy v. Schwarz Pharma, Inc.*, 702 F.3d 177, 182 (5th Cir. 2012)). Because Rule 59(e) has a "narrow purpose," the Fifth Circuit has observed that "[r]econsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly." *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004). Thus, a motion for reconsideration "is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Id.* "When there exists no independent reason for reconsideration other than mere disagreement with a prior order, reconsideration is a waste of judicial time and resources and should not be granted." *Ferraro v. Liberty Mut. Ins. Co.*, No. 13-4992, 2014 WL 5324987, at *1 (E.D. La. Oct. 17, 2014).

**B. Whether the Court's Ruling Contained Manifest Error of Fact**

RedHawk filed its motion within the twenty-eight-day period, and thus, the Court evaluates its motion under Rule 59(e). *See* Rec. Docs. 211, 212, 214. RedHawk argues that reconsideration of this Court's ruling on Schreiber's motion for enforcement of settlement (Rec. Doc. 211) is warranted "to correct manifest error of fact." Rec. Doc. 214-1 at 4. RedHawk, however, fails to demonstrate any manifest error.

In RedHawk's supplemental briefing opposing Schreiber's motion for settlement enforcement, RedHawk acknowledges various transactions occurring in 2019, as it does in its instant motion, and states: "the issuances in these conversions were not 'for cash', and the proceeds were received prior to the Settlement Agreement. As such, the acceleration provision was not triggered." Rec. Doc. 208 at 5. The Court then explicitly acknowledged this argument in its Order granting Schreiber's motion to enforce settlement and concluded:

> the aforementioned transactions considered in its totality triggered the acceleration clause because once RedHawk's notes are converted or warrants are exercised, a confirmed sale of shares has occurred and, rather than paying the amount due on the note, RedHawk must use 50% of monetary proceeds received from the issuance to reduce debts owed to Schreiber. Using convertible notes or warrants to blatantly evade the acceleration clause cannot be condoned when RedHawk's SEC filings identify multiple instances where it converted notes into shares without making any payments to reduce its debt to Schreiber.

Rec. Doc. 211 at 10-11. RedHawk may be disappointed that the Court does not share its interpretation of the parties' settlement agreement, but that is not an excuse to recycle arguments that the Court has already addressed in its prior ruling. *See Ferraro*, 2014 WL 5324987, at *1 (explaining that a motion for reconsideration is not the proper vehicle for "a mere disagreement with a prior order"). RedHawk admitted that the issue before the Court in

Schreiber's motion for settlement enforcement was "how to interpret the parties' agreement–to determine the elements of the acceleration provision." The Court did just that in its prior Order, and with regard to the credible evidence in the record, found that the convertible note transactions triggered the acceleration clause in the parties' settlement agreement. *See* Rec. Doc. 211 at 10-11; *see also* Rec. Doc. 151-2 at 3-4.

RedHawk now asserts that "[t]he contract clearly and unambiguously shows that the intent of the parties was to allow for earlier repayment to Schreiber *if and only if* RedHawk issued stock for cash *after* the effective date of the Settlement Agreement." Rec. Doc. 214-1 at 5. But the Court already stated that "[t]he plain and expansive language of the agreement's acceleration clause did not condition when cash would be received for the converted equity (shares of stock) so long as the issuance of that equity occurred 'while any amounts are due to Schreiber.'" Rec. Doc. 211 at 12. The parties' settlement agreement does not clearly show any fact to the contrary. *See* Rec. Doc. 151-2 at 4. RedHawk's disagreement with the Court's interpretation of the parties' settlement agreement does not mean the Court made any clear or unmistakable error of fact. *See, e.g.*, *Hunt Bldg. Co., Ltd. v. John Hancock Life Ins. Co. (U.S.A.)*, No. EP—11-CV-00295-DCG, 2013 WL 12094199, at *3-4 (W.D. Tex. Aug. 12, 2013). Thus,

RedHawk fails to prove this Court's prior ruling contained any manifest error.

New Orleans, Louisiana this 5th day of January, 2022

_____
SENIOR UNITED STATES DISTRICT JUDGE