UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**REDHAWK HOLDINGS CORP., ET AL.**                    **CIVIL ACTION**

**VERSUS**                                             **NO. 17-819**

**DANIEL J. SCHREIBER, ET AL.**                       **SECTION "B"(5)**

ORDER AND REASONS

Before the Court are defendant Daniel J. Schreiber's motion for attorneys' fees and costs (Rec. Doc. 213) and plaintiffs' response in opposition (Rec. Doc. 215).

For the reasons discussed below,

**IT IS ORDERED** that Schreiber's motion for attorneys' fees and costs (Rec. Doc. 213) is **GRANTED in part**, awarding Schreiber $85,035.64, representing reasonable attorneys' fees and costs incurred with his successful efforts to enforce the settlement agreement.

I.   **FACTS AND PROCEDURAL HISTORY**

The facts of the underlying action have been well documented on the record. Plaintiffs RedHawk Holdings Corporation ("RedHawk") and Beechwood Properties, LLC filed this lawsuit against Daniel J. Schreiber, the former CEO and director of RedHawk, for, amongst other claims, securities fraud. Rec. Docs. 1, 20. Schreiber filed counterclaims alleging an interference with his ability to transfer his shares of RedHawk stock. Rec. Doc. 49. The parties engaged in settlement discussions before the Magistrate Judge in

1

January 2019. Rec. Docs. 147, 148. Shortly thereafter, the undersigned was notified in February 2019 that a settlement had been reached. Rec. Doc. 149. This court subsequently dismissed the action but retained jurisdiction to enforce the settlement upon a showing of good cause. Rec. Doc. 150.

Under the settlement agreement, Schreiber would transfer all his RedHawk stock back to RedHawk. Rec. Doc. 151-2 at 2. In exchange, RedHawk agreed to pay $250,000 immediately upon signing the agreement and issue two non-interest-bearing promissory notes in the amount of $200,000 each to be paid on or before September 6, 2020 and September 5, 2021 respectively. *Id.* The agreement contained an acceleration clause for the two promissory notes that included several terms including (1) a thirty-day grace period following any RedHawk default, after which all payments would be immediately due and payable plus 18% interest and the greater of reasonable attorneys' fees or 10% of the amount due and (2) a provision that if RedHawk issued any shares of any series or class for cash while any amounts are due, 50% of the monetary proceeds were to be paid to Schreiber to reduce the amount owed. *Id.* at 3-4.

A few months after confecting the settlement agreement, RedHawk issued on September 16, 2019 a SEC Form 8-8k and a press release providing that it "completed the sale of $500,000 in aggregate principal amount of new convertible notes," and issued

2

a number of stock warrants that are exercisable in ten years for the purchase of an aggregate of 12.5 million shares of RedHawk common stock. Rec. Doc. 151-1 at 3.

The following day, Schreiber informed RedHawk that this action triggered the acceleration clause because it failed to pay Schreiber $250,000 from the proceeds of the sale and RedHawk was now in default. Rec. Doc. 151-1 at 3. RedHawk responded it was not in default because the transaction was for sale of convertible notes and not for the sale of stocks. *Id.* at 4.

In November 2019, Schreiber filed a motion to enforce settlement seeking the accelerated amounts of the notes for $400,000 plus 18% interest running from the date of the agreement, and attorney fees of either the actual sums expended in pursuing that payment or 10% of the amount due, whichever is greater. RedHawk responded to the motion and this Court granted Schreiber leave to reply. Rec. Docs. 157, 161. RedHawk opposed the motion for leave and requested an opportunity to submit a sur-reply should the Court grant it but leave to file a sur-reply was denied. *See* Rec. Doc. 159.

In March 2020, this Court granted Schreiber's motion to enforce the settlement agreement, Rec. Doc. 162, and awarded Schreiber $519,495.78, which included the entire accelerated amount due on the notes plus 18% interest and attorneys' fees. Rec. Doc. 179. RedHawk appealed the judgment and the Fifth Circuit

vacated and remanded to allow RedHawk to file a sur-reply and thereafter reconsider the instant motion to enforce settlement. *RedHawk Holdings Corp. v. Schreiber*, 836 F. App'x 232, 233, 237 (5th Cir. 2020) (per curiam).

While the appeal was pending, RedHawk paid all principal amounts due to Schreiber under the settlement agreement and notes ($400,000 for the remaining notes plus the $250,000 RedHawk paid at the time of settlement). Rec. Doc. 208 at 3. RedHawk subsequently filed its sur-reply to the motion, Rec. Doc. 208, and Schreiber responded. Rec. Doc. 210. Therefore, the only remaining issue at the time was whether RedHawk breached the acceleration provision of the settlement agreement, thereby entitling Schreiber to interest and attorneys' fees or 10% of the amounts due, whichever is greater.[1] On September 23, 2021, the Court ruled that RedHawk did breach the acceleration clause, and thus, Schreiber was entitled to an additional $101,490.27, representing contractual interest in the amount of 18% on the outstanding principal debts, until they were paid, plus reasonable attorneys' fees and costs incurred with its successful efforts to enforce the settlement agreement or 10% of the amounts due, whichever is greater. Rec. Doc. 211. Shortly after the Court's ruling, Schreiber filed the instant motion for attorneys' fees and costs. Rec. Doc.

---

[1] While opposing entitlement issues, RedHawk did not appear to question Schreiber's statement that its current attorney fees in seeking enforcement are greater than 10% of the amount allegedly due.

4

213. RedHawk then filed a motion for reconsideration of the Court's Order granting Schreiber's motion to enforce settlement (Rec. Doc. 211) and related Judgment (Rec. Doc. 212). Rec. Doc. 214. The latter motion was denied. Rec. Doc. 222.

## II. LAW AND ANALYSIS

### A. Standard for Recovering Attorneys' Fees

The rule in the federal court system has long been that attorneys' fees are not ordinarily recoverable in the absence of a statute or enforceable contract providing therefor. *Fisk Elec. Co. v. DQSI, L.L.C.*, 740 F. App'x 399, 401 (5th Cir. 2018) (quoting *F.D. Rich Co., Inc. v. U.S. for Use of Indus. Lumber Co., Inc.*, 417 U.S. 116, 126 (1974)). "Where attorney's fees are provided by contract, a trial court does not possess the same degree of equitable discretion to deny such fees that it has when applying a statute allowing for a discretionary award." *Cable Marine, Inc. v. M/V Trust Me II*, 632 F.2d 1344, 1345 (5th Cir. 1980) (per curiam). "Nevertheless, a court in its sound discretion may decline to award attorney's fees authorized by a contractual provision when it believes that such an award would be inequitable and unreasonable." *Id.*

When awarding attorney's fees, the Fifth Circuit uses the "lodestar" method. *Heidtman v. Cnty. of El Paso*, 171 F.3d 1038, 1043 (5th Cir. 1999). The lodestar is calculated by "multiplying the number of hours reasonably expended by an appropriate hourly

5

rate in the community for such work." *Id.* The calculation may be accepted as is or adjusted. *Blanchard v. Bergeron*, 489 U.S. 87, 94 (1989). There are twelve factors to consider in establishing whether to accept or adjust the lodestar. *See Johnson v. Georgia Highway Exp.,* 488 F. 2d 714, 717-19 (5th Cir. 1974). Those twelve factors are:

> (1) the time and labor involved; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney due to this case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of counsel; (10) the undesirability of the case; (11) the nature and length of the proceedings; and (12) awards in similar cases.

*See id.* However, to the extent that any *Johnson* factors are subsumed in the initial lodestar calculation, they should not be reconsidered when determining whether adjustment to the lodestar is required. *See Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998).

### B. Recoverability

"Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983). In those cases,

> the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds

6

>is not a sufficient reason for reducing a fee. The result
>is what matters.

*Id.* (citations omitted). However, if a party only achieved "partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonably hourly rate may be an excessive amount. This will be true even where [a party's] claims were interrelated, nonfrivolous, and raised in good faith." *Id.* at 436. Nevertheless, "the most critical factor is the degree of success obtained." *Id.*

RedHawk argues that Schreiber is not entitled to attorneys' fees for his motion to enforce settlement agreement because he did not prevail on the legal arguments set forth in that motion's supporting memorandum. Rec. Doc. 215 at 3-4. According to RedHawk, Schreiber only prevailed on arguments from his reply, and thus, attorneys' fees should be limited. *Id.* In this assertion, RedHawk misunderstands how courts apportion attorneys' fees after a successful outcome.

Indeed, a district court may decide not to award attorneys' fees for unsuccessful claims. *See Hensley*, 461 U.S. at 435. However, in this case, there does not appear to be any distinct unsuccessful claims. In Schreiber's motion to enforce settlement agreement, he principally argues that RedHawk's 2019 convertible note transactions triggered the acceleration clause in the parties' settlement agreement, and as such, Schreiber was entitled

7

to the proceeds of that acceleration clause. *See generally* Rec. Doc. 151. In Schreiber's initial motion, he posits one legal theory. *See* Rec. Doc. 151. In his reply, he expands on that initial theory and then adds an alternative one. *See* Rec. Doc. 161. Despite the assertion of multiple legal theories, Schreiber maintained only one claim: that RedHawk's 2019 convertible note transactions triggered the acceleration clause in the parties' settlement agreement. *Cf. Holy Cross v. U.S. Army Corps of Eng'rs.*, No. 03-370, 2008 WL 2278112, at *1 (E.D. La. May 30, 2008) (noting three separate claims: one under the Resource Conservation and Recovery Act, the second under the National Environmental Policy Act asserting that the initial Environmental Impact Statement (EIS) was inadequate, and the third that the defendant failed to file a supplemental EIS when appropriate); *Howell v. Town of Ball*, No. 1:12-CV-00951, 2018 WL 580055, at *6 (W.D. La. Jan. 26, 2018) (stating that plaintiff's claims for conspiracy, intentional infliction of emotional distress, and due process violations were distinct from claims for First Amendment Retaliation and False Claims Act claims).

Importantly, Schreiber was entirely successful on his claim. On September 23, 2021, this Court found that Schreiber was entitled to $101,490.27, representing contractual interest in the amount of 18% on the outstanding principal debts until they were paid. Rec. Doc. 211 at 16. In other words, we found that the acceleration

clause in the settlement agreement was triggered, and thus, Schreiber was entitled to all the proceeds from that provision. *See id.* That Schreiber prevailed on one legal theory and not the other does not necessitate reducing attorneys' fees, for "litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of . . . certain grounds is not a sufficient reason for reducing a fee." *See Hensley*, 461 U.S. at 435; *cf. Migis v. Pearle Vision*, 135 F.3d 1041, 1048 (5th Cir. 1988) (reducing fees because plaintiff alleged four separate acts of discrimination and only prevailed on one); *Jason D.W. by Douglas W. v. Houston Indep. Sch. Dist.*, 158 F.3d 205, 210-11 (5th Cir. 1998) (reducing fees because although plaintiff prevailed in receiving reimbursements from psychologists and adjusting his behavior modification plan, he was unsuccessful on his school placement claim, among others); *Prejean v. Ochsner Clinic*, 669 F. Supp. 146, 149 (E.D. La. 1987) (reducing fees because plaintiff "did not gain promotion to partnership and attendant benefits" but "did receive substantial monetary relief, limited educational opportunity, and a favorable employment recommendation"). Accordingly, Schreiber is entitled to reasonable attorneys' fees and costs associated with his motion to enforce settlement agreement. *See Abner v. Kan. City S. Ry. Co.*, No. 03-0765, 2007 WL 1805782, at *5 (W.D. La. June 21, 2007) (quoting *Commonwealth Oil Refin. Co., Inc. v. EEOC*, 720 F.2d 1383, 1385

(5th Cir. 1983) ("The proper focus is whether the plaintiff has been successful on the central issue as exhibited by the fact that he has acquired the primary relief sought.") (internal quotation marks omitted).[2]

### C. Reasonableness

"[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). In documenting the hours expended, attorneys should "exercise 'billing judgment' by excluding time that is unproductive, excessive, duplicative, or inadequately documented when seeking fee awards." *Creecy v. Metro. Prop. & Cas. Ins. Co.*, 548 F. Supp. 2d 279, 286 (E.D. La. 2008) (quoting *Walker v. U.S. Dept. of Hous. and Urb. Dev.*, 99 F.3d 761, 769 (5th Cir. 1996)). "The remedy for failing to exercise billing judgment is to reduce the hours awarded as a percentage and exclude hours that were not reasonably expended." *Id.* Courts may eliminate hours that are excessive, duplicative, and too vague to permit meaningful review.

---

[2] This finding is only bolstered by the plain language of the contract, which states:
> [I]n the event of litigation, arbitration or other proceeding is brought concerning the interpretation or enforcement of this Agreement, or because of an alleged dispute, default, misrepresentation or breach in connection with any of the provisions of this Agreement, the successful or prevailing party shall be entitled to recover reasonable attorneys' fees, expenses, and costs actually incurred in connection therewith.

Rec. Doc. 151-2 at 8. As Schreiber is the prevailing party, he is entitled to all reasonable fees associated with the instant dispute. *See id.; see also* Rec. Doc. 211 at 16.

*Johnson v. Big Lots Stores, Inc.*, 639 F. Supp. 2d 696, 702 (E.D. La. 2009).

Reasonable fees are calculated based on the prevailing market rate in the relevant community for attorneys of reasonably comparable skill and experience. *See Blum v. Stetson*, 465 U.S. 886, 895 (1984). "Determination of the reasonable hourly rate for a particular community is generally established through affidavits of other attorneys practicing there." *Chisholm v. Hood*, 90 F. App'x 709, 710 (5th Cir. 2004) (per curiam) (citing *Watkins v. Fordice*, 7 F.3d 453, 458 (5th Cir. 1993)). A court determines hourly rates on a case-by-case basis. *Id*. at 710-711.

Schreiber's counsel requests a total reimbursement of $85,280.89 in attorneys' fees and costs. For the motion to enforce settlement agreement and ensuing litigation, they claim that Kathryn Gonski, a partner practicing for over ten years spent 177.77 hours on this matter and charged $325 per hour, Paul Matthew Jones, a partner with over thirty years' experience, worked 30.25 hours at $425 per hour, Joseph P. Hebert and Phillip Kirk Jones, Jr., counsel with over forty years' experience in creditor issues worked 12 hours at $450 per hour and $470 per hour respectively, and Jaclyn E. Hickman, an associate with seven years' experience spent 10.75 hours at $295 per hour. Heather Vice, a paralegal, spent 0.75 hours at $170 per hour. Schreiber's counsel also incurred $7,721.25 in fees preparing this instant motion and

11

$4,091.25 opposing RedHawk's motion for reconsideration and preparing the reply for this instant motion. Rec. Doc. 219 at 1; Rec. Doc. 213-1 at 10. Total costs for Westlaw research and recording the Court's judgment in Lafayette Parish mortgage records equal $1,845.89. RedHawk does not oppose the hourly rates of Schreiber's counsel, indicating that the requested rates are prima facie reasonable. *See Big Lot Stores,* 639 F. Supp. 2d at 702 ("That [defendant] has not opposed the rates is further evidence of their reasonableness."); *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 328 (5th Cir. 1995). Schreiber also submits detailed time records for its attorneys that reflect the date, time involved, and nature of services performed. *See generally* Rec. Doc. 213-2. RedHawk also does not oppose these submissions.[3] *See generally* Rec. Doc. 215.

After reviewing Schreiber's detailed billing statements, and considering that RedHawk has not specifically opposed Schreiber's calculations, the Court finds that the hours reported are generally reasonable. RedHawk prolonged this dispute for two years by contesting almost every issue, including a motion for leave to file a reply, and continues to file motions in support of its position after the Court has now twice carefully considered the motion to enforce settlement agreement. *See* Rec. Docs. 159, 162,

---

[3] However, as discussed in Part II.B, RedHawk does dispute whether Schreiber should be entitled to attorneys' fees for the motion to enforce settlement. *See supra* Part II.B.

12

211. Furthermore, in preparing this instant motion Schreiber's counsel was required to sustain its burden of proof by carefully inspecting each time entry, an activity necessarily consuming substantial attorney time, and had to prepare a brief and reply brief. Therefore, Schreiber is also entitled to receive attorneys' fees for this instant motion. *See Chem. Mfrs. Ass'n v. U.S. EPA*, 885 F.2d 1276, 1283 (5th Cir. 1989). Accordingly, it appears that the hours Schreiber's counsel incurred generally seem to represent the time necessary to successfully litigate this matter.

Nevertheless, there are two entries where fees were either unrelated to the settlement agreement dispute or were excessive. On July 27, 2020, Schreiber's counsel reported spending 0.5 hours and $212.50 on "review of issues regarding needle destruction technology." Rec. Doc. 213-2 at 41. Schreiber does not explain how this work connects to the settlement agreement dispute. *See id.; see generally* Rec. Docs. 213-1, 219. Additionally, on November 13, 2019, Schreiber's counsel indicated that they spent 0.25 hours and $81.25 reviewing and analyzing the Court's Order denying oral argument. Rec. Doc. 213-2 at 7. As this Order was quite short and routine, the Court finds the hours expended for this time entry should be reduced to 0.15 hours or $48.75. Besides these two reductions, the hours reported by Schreiber's counsel are reasonable. Moreover, the rates offered by Schreiber's counsel are appropriate considering counsel's experience in this field. *See M*

*C Bank & Tr. Co. v. Suard Barge Serv., Inc.*, No. 16-14311, 2017 WL 6344021, at *2 (E.D. La. Dec. 12, 2017) (finding that $395 was a reasonable hourly rate for an attorney with over 30 years of experience); *Funez v. EBM*, No. 16-01922, 2018 WL 5004806, at *4 (E.D. La. Oct. 16, 2018) (finding a partner rate of $350 per hour reasonable); *Kim v. Ferdinand*, No. 17-16180, 2018 WL 1635795, at *4 (E.D. La. Apr. 5, 2018) (finding $410 per hour "typical for partners in this community"); *Big Lot Stores*, 639 F. Supp. 2d at 701 (finding $225 per hour was a reasonable rate for an associate).

After the lodestar is determined, the Court may adjust the lodestar upward or downward depending on the twelve factors set forth in *Johnson*. *Johnson*, 488 F. 2d at 717-19. In this case, neither party has requested a lodestar adjustment pursuant to the *Johnson* factors, except for RedHawk's claim that Schreiber cannot collect attorneys' fees for his motion to enforce settlement agreement, as discussed previously. The Court has considered the *Johnson* factors and concluded that they do not warrant an upward or downward departure here.

New Orleans, Louisiana this 6th day of January, 2022

_____
SENIOR UNITED STATES DISTRICT JUDGE